**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**HUESTON**                                        :
                                                   :
                                **Petitioner,**    :
                                                   :        **1:25-cv-05600** (ALC)
                    **-against-**                  :
                                                   :        <u>**OPINION & ORDER**</u>
                                                   :
**RICKARD**                                        :
                                **Respondent.**    :
                                                   :
-------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

 *Pro se* Petitioner Harry Hueston filed a motion for writ of habeas corpus pursuant to 28

U.S.C. § 2241 seeking to apply his earned time credits toward supervised release or prerelease

custody. ECF No. 1. Because the Court does not have the authority to change the Petitioner's

Risk Assessment Score that was determined to be "medium" by the Bureau of Prisons ("BOP"),

the Court denies the Petition.

**BACKGROUND**

 **I. Legal Background**

 "On December 21, 2018, Congress enacted the First Step Act ("FSA"), which permits

[people convicted of federal crimes] to participate in recidivism reduction programs to earn time

credits qualifying them for early release from custody. *See* 18 U.S.C. §§ 3632(d)(4), 3624(g)(1).

Under this system, an incarcerated person who successfully completes evidence-based

recidivism reduction programming or productive activities, *id*. § 3632(d)(4), earns credits that

may be applied either toward earlier placement in pre-release custody or toward a term of

supervised release." *DONTE MCCLELLON, Petitioner, v. E. RICKARD, Warden of FCI*

*Otisville; & WILLIAM K. MARSHALL III, Dir. of Fed. Bureau of Prisons, Respondents*., No. 24-

CV-10053 (VSB) (BCM), 2026 WL 686499, at *1 (S.D.N.Y. Mar. 11, 2026) (internal citations and quotations omitted).

Under the earned time credit system, for every 30 days of successful participation in BOP-approved programming, an incarcerated person earns 10 days of time credits. *Id*. § 3632(d)(4)(A)(i). An incarcerated person who is designated as minimum or low risk of recidivating, and who, over two consecutive assessments, has not increased their risk of recidivism, can earn an additional 5 days of credit time for every 30 days of successful participation in programming. *Id.* § 3632(d)(4)(A)(ii).

Also under the FSA, the Attorney General was directed to develop a tool to assess the recidivism risk for incarcerated people. 18 U.S.C. § 3632(a). The Department of Justice ("DOJ") created the Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN"), which assesses an incarcerated person's recidivism risk by examining fifteen risk factors and assigning each factor a certain point value. U.S. Dep't of Justice, Off. of Atty. Gen., The First Step Act of 2018: Risk and Needs Assessment System – Update (Jan. 2020) ("FSA Risk and Needs Assessment System – Update"), https://www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf, ch. III, at 10-11 and app. II. An incarcerated person will receive two risk scores: one for general recidivism risk and one for risk of violent recidivism. *Id.,* ch. III, at 12. Each risk score will place someone in a classification of minimum, low, medium, or high. *Id*., ch III, at 50. If the classifications for general and violent recidivism are different, the higher classification controls. Letticia Blakely Declaration ("Blakely Decl.") ¶ 12. The risk factors BOP analyzes to calculate someone's PATTERN score include history of escapes. FSA Risk and Needs Assessment System – Update, ch. III, at 10-11 and app.

2

II. When determining someone's history of escapes, BOP considers acts for which there are documented findings of guilt, including violations of supervised release. *See* BOP Program Statement 5100.08, Program Statement Inmate Security Designation and Custody Classification (Sept. 12, 2006), https://www.bop.gov/policy/progstat/5100_008.pdf.

## II. Factual Background

On September 30, 2015 in the Southern District of New York, Petitioner Harry Hueston pleaded guilty to one count of conspiracy to commit a Hobbs Act robbery in violation of 18 U.S.C. § 1951 and was sentenced to 180 months of imprisonment, followed by three years of supervised release. Blakely Decl., Ex. 1.

On January 14, 2026, the Federal Correctional Institution at Ray Brook, New York ("FCI Ray Brook"), where Petitioner is currently incarcerated,[1] calculated Petitioner's PATTERN score and determined the general score was 31, placing him in the low classification, while the risk score for violent recidivism was 27, placing him in the medium category. Because BOP applies the higher classification, Petitioner was classified as medium risk. Blakely Decl. ¶¶ 12, 14; Ex. 2.

A history of escape, which includes violations of supervised release, adds point to an inmate's recidivism score. Since petitioner violated supervised release in 2007, 3 points were added to his general score and 2 points were added to his violent score. *Id*. ¶¶ 9, 15-16 & Exs. 2-3. As of January 1, 2026, Petitioner has 455 earned time credits. *Id*. 19; Ex. 4.

## III. Procedural Background

---

[1] At the time the Petition was filed, Petitioner was incarcerated at FCI Otisville. He was transferred to FCI Ray Brook on December 29, 2025. Blakely Decl. ¶ 4.

On July 2, 2025, Petitioner filed a writ for habeas corpus pursuant to 18. U.S.C. § 2241. ECF No. 1. On October 2, 2025, the Court ordered the Government to answer by December 1, 2025. ECF No. 4. Petitioner filed a motion to expedite on October 22, 2025. ECF No. 10. The Court held a telephonic conference on December 1, 2025 and ordered the Parties to brief the issue of ripeness. ECF No. 17. On January 27, 2026, the Court held another telephonic conference and ordered the Government to answer the Petition by February 2, 2026.[2] The Government filed their answer on February 2, 2026. ECF No. 30. On February 18, 2026, Petitioner filed his Reply. ECF No. 32.

## STANDARD OF REVIEW

Habeas corpus relief under 28 U.S.C. § 2241 is available to individuals "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Courts have the authority to review a petition for a writ of habeas corpus and "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled [to such relief]." 28 U.S.C. § 2243.

The Second Circuit has noted that a "challenge to the execution of a sentence—in contrast to the imposition of a sentence—is properly filed pursuant to § 2241." *Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) (cleaned up). Execution of a sentence may include "such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions." *Jiminian v. Nash*,

---

[2] The Court granted the Government's request for additional time to respond because of the historic 43-day government shutdown.

245 F.3d 144, 146 (2d Cir. 2001). Therefore, "[t]he proper vehicle for a challenge to the BOP's calculation of earned time credit is a petition for a writ of habeas corpus under 28 U.S.C. § 2241." *Sanchez v. Warden at F.C.I. Hazelton*, No. 24-CV-1251, 2024 WL 1969792, at *2 (S.D.N.Y. May 1, 2024). "When a petitioner brings a habeas petition pursuant to § 2241, the petitioner 'bears the burden of proving that he is being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Dzhabrailov v. Decker*, 2020 WL 2731966, at *3 (S.D.N.Y. May 26, 2020) (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)).

A petitioner seeking relief pursuant to 28 U.S.C. § 2241 must exhaust their administrative remedies. *See Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 634 (2d Cir. 2001). "This requires compliance with the BOP's four-step Administrative Remedy Program." *Lallave v. Martinez*, 609 F. Supp. 3d 164, 179 (E.D.N.Y. 2022) (citing 28 C.F.R. § 542.10(a)).

Additionally, *pro se* litigants are afforded "special solicitude" and their filings must be interpreted to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam) (internal quotation marks omitted); see also *Lithgow v. Keyser*, No. 20-CV-3655, 2021 WL 4200722, at *2 (S.D.N.Y. Aug. 16, 2021), report and recommendation adopted, 2021 WL 4391122 (S.D.N.Y. Sept. 24, 2021).

## DISCUSSION

*Pro se* Petitioner Hueston has exhausted his administrative remedies in raising his claim that BOP refused to apply his earned time credits toward early transfer to supervised release or pre-release custody, as well as his allegation of improper scoring in the categories of history of escape, programs completed, and work programs. Blakely Decl. ¶ 21 & Ex. 5 at 7-8.

5

**Petitioner's Medium Risk Classification Precludes Him from Applying His Many Earned Time Credits Toward Early Prerelease Custody or Supervised Release**

This Court is constrained from providing Petitioner relief because of provision 18 U.S.C. § 3264(g) in the FSA. In his Petition, Mr. Hueston argues that the BOP has exceeded its authority in denying him earned time credits. Petition ("Pet.") at 6. He says that BOP has considered him ineligible for earned time credits based on a PATTERN classification as medium risk and that if his PATTERN score is corrected that he would be released immediately. *See id.* at 7-8. Petitioner has successfully earned 455 earned time credits. However, under § 3264(g), which governs who is eligible for early prerelease custody or supervised release, an incarcerated person must also have a risk score of minimum or low in their most recent assessment unless they have had a petition approved by the warden of the prison. *Id.* § 3264(g)(D)(i)(II). Other courts have confirmed this. For instance, in *Schulz v. Warden*, the court found that because of the petitioner's medium risk score, he could not apply earned time credits to early prerelease custody or supervised release, No. 9:23-CV-0295 (AJB/TWD), 2025 WL 4070712 (N.D.N.Y. Dec. 31, 2025), report and recommendation adopted, No. 9:23-CV-295 (AJB/TWD), 2026 WL 173999 (N.D.N.Y. Jan. 22, 2026) (also holding that the court could not order BOP to reduce petitioner's PATTERN score as it is within the agency's sole discretion).

Petitioner has not petitioned to the warden under § 3264(g)(D)(i)(II). In his Reply, Petitioner asks *the Court* to order BOP to process this petition under § 3264(g)(D)(i)(II), but the statute does not allow for that. Petitioner's Reply at 4. Thus, at this time, unless Petitioner receives approval from the warden, Petitioner is statutorily prohibited from applying his

6

numerous earned time credits to early prelease custody or supervised release. Someone as engaged in programming as Petitioner should be able to more easily lower their PATTERN score. However, it is for Congress to adopt reforms to the FSA to further promote rehabilitation among people convicted of federal crimes.

CONCLUSION

For the aforementioned reasons, the Petition is denied. Petitioner is encouraged to petition to the warden. The Clerk of Court is respectfully directed to terminate this case.

**SO ORDERED.**

**Dated:** March 31, 2026

      **New York, New York**
                                    **ANDREW L. CARTER, JR.**
                                    **United States District Judge**

7